# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CHRISTI TURPIN,**

    **Plaintiff,**

v.

**JOHN KOROPCHAK,**
**DAVID L. WILSON, and**
**NANCY MUNDSCHENK,**

    **Defendants.**                                                                 **Case No. 07-cv-806-DRH**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. INTRODUCTION

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Lack of Jurisdiction (Doc. 17), which has been fully briefed by the parties (Docs. 17 - 22). Plaintiff's suit is based on diversity jurisdiction, seeking injunctive, declaratory and monetary relief against defendants John Koropchak, the Dean of the Graduate School at Southern Illinois University at Carbondale ("SIU"); David Wilson, the Associate Dean and Director of the SIU Graduate School; and Nancy Mundschenk, an Associate Professor of Educational Psychology & Special Education at SIU. Defendants assert that this Court lacks subject matter jurisdiction over Plaintiff's claims. Although Plaintiff sued Defendants in their individual capacities, they argue that SIU is the true Defendant here, as it is the entity that will be liable and responsible for any damages that may stem from this suit. In other

words, Defendants believe that Plaintiff's claims should have been brought against them in their official, rather than individual, capacity. Defendants note that the Illinois Court of Claims has exclusive jurisdiction over claims against the State, pursuant to the Eleventh Amendment. Further, Defendants assert that SIU, as a state university, is considered a state agency. Therefore, proper jurisdiction of this matter lies exclusively with the Illinois Court of Claims and the case should be dismissed from this Court. For the reasons discussed herein, the Court agrees with Defendants.

## II. **BACKGROUND**

Plaintiff was enrolled as a student at SIU's Graduate School to earn her Ph.D. in Educational Psychology. She alleges that in March 1999, she completed her dissertation and defended it in front of a four-person committee, including her Ph.D. advisor and three others – one of whom was defendant Mundschenk. She further alleges she completed all of her requisite coursework prior to March 1999. Allegedly, all four members signed Plaintiff's Dissertation Approval Form (*see* Amended Complaint, Doc. 14, Ex. A). Therefore, all that Plaintiff needed to have her Ph.D. posted by SIU was for the Head of the Department to sign the form and have it filed with the Graduate School. Plaintiff believes the Head of the Department did sign the form and it was filed, but that the Graduate School either lost or misplaced it. Nevertheless, she alleges, SIU represented to third parties that she had earned her Ph.D.

Plaintiff listed on her resume that she had earned a Ph.D. from SIU in

1999. She was subsequently employed by Parkway School District in St. Louis, Missouri ("Parkway"), in January 2003. However, when Parkway attempted to confirm that Plaintiff had, in fact, earned her Ph.D., it was unable to do so. Plaintiff alleges that she contacted defendant Wilson, who wrote a letter to the Superintendent of Parkway, explaining that although Plaintiff had completed all the requirements for her Ph.D., there was some misplaced paperwork concerning her dissertation that erroneously led to her degree not being posted, but that the error would be corrected (Doc. 14, Ex. B). Relying on Wilson's letter, Plaintiff continued to represent that she had earned a Ph.D. from SIU in 1999.

Later, Plaintiff was employed by McCarthy Building Companies of St. Louis ("McCarthy"), in the summer of 2007, with an annual salary of approximately $160,000. As Parkway had done previously, McCarthy attempted to verify Plaintiff had earned her Ph.D. from SIU in 1999. Plaintiff alleges that this time, defendant Wilson declined to confirm that Plaintiff had earned her Ph.D., despite her repeated requests. She further alleges Wilson went so far as to inform McCarthy that Plaintiff had not earned her Ph.D., despite her allegation that he had conducted a full investigation on the matter in 2003 and knew Plaintiff had earned the degree. Plaintiff states that to date, defendant Wilson still refuses to confirm she earned her Ph.D. "although he has no factual basis to support his claim and despite the fact that he either knows that it was earned or he is acting in deliberate disregard of the truth" (Doc. 14, ¶ 23).

Plaintiff alleges that defendant Koropchak also refused to confirm

Plaintiff had earned a Ph.D. despite repeated requests to do so made by McCarthy and then Plaintiff herself. She alleges that Koropchak spoke to McCarthy employees and told them Plaintiff had not earned a Ph.D. from SIU. When Plaintiff forwarded him a copy of her Dissertation Approval Form and revised Ph.D. thesis, Koropchak still allegedly refused to withdraw his prior statements made to McCarthy, despite the fact that he was aware that Plaintiff may not be discharged from her employment if he did so. Plaintiff alleges that Koropchak knew she had completed all the prerequisites needed to post her Ph.D. but continued to refuse to confirm this fact, even though he allegedly possessed a statement from Plaintiff's Ph.D. advisor (unnamed in the Complaint) to Plaintiff stating, "there is no reason that I am aware of that keeps SIU from posting your Ph.D. to the spring semester of 1999" (Doc. 14, Ex. C). Plaintiff asserts that Koropchak has no factual basis to support his claim that she has not earned a Ph.D. from SIU and either knows this or is acting in deliberate disregard of the truth.

On October 30, 2007, Plaintiff alleges that a meeting was held and attended by defendant Mundschenk and members of Plaintiff's Ph.D. committee, other professors and legal counsel, in order to resolve all issues concerning her Ph.D. Plaintiff alleges that at this meeting, Mundschenk stated that she had served on Plaintiff's Ph.D. committee and had never signed off on the Dissertation Approval Form because Plaintiff had further revisions to make on her Ph.D. before it could be posted. Again, Plaintiff alleges Mundschenk either knew her statements to be untrue or made them "in wanton disregard of the truth," having no factual basis to support

such statements. Plaintiff believes that but for Mundscheck's false statements, SIU would have posted Plaintiff's Ph.D., effective the spring semester of 1999. Plaintiff also alleges that at the October 20, 2007 meeting, defendant Koropchak concealed from the Committee members both the contents of and the actual signed copy of Plaintiff's Dissertation Approval Form (Doc. 14, Ex. A).

Plaintiff's Amended Complaint (Doc. 14), states two Counts: Count I is a claim seeking a mandatory injunction, specific performance and incidental damages against defendant Koropchak; Count II is a claim for tortious interference with a business expectancy against defendants Koropchak, Wilson and Mundschenk. Plaintiff seeks a Mandatory Injunction Order directing Koropchak to post her Ph.D. effective as of the spring semester of 1999. Plaintiff believes Koropchak, as Dean of the Graduate School, has the discretion to order SIU to post her Ph.D. Additionally, Plaintiff seeks damages, including punitives, against Defendants, jointly and severally, for tortious interference with her employment relationship with McCarthy. In sum, Plaintiff alleges that Defendants' actions caused McCarthy to terminate her employment and adversely affected her ability to find future employment because she cannot represent that she has earned a Ph.D. from SIU. Ultimately, Plaintiff believes the actions taken by Defendants in representing to third parties that she had not, in fact, earned a Ph.D. from SIU in 1999 were not authorized, wrongful and illegal because: (1) Defendants had a duty to refrain from representing that Plaintiff had not earned her Ph.D. when, in fact, they knew she had earned it; (2) Defendants had a duty to refrain from undertaking any actions that prevented the posting of Plaintiff's

Ph.D. when, in fact, they knew that she had earned it; and (3) Defendants had a duty to affirmatively represent and take such actions to confirm Plaintiff had earned her Ph.D. when they knew she had earned it.

### III. DISCUSSION

Defendants have moved to dismiss this case (Doc. 17), asserting that this Court lacks jurisdiction over the suit as Plaintiff's claims are essentially made against Defendants in their official capacity as agents of SIU, rather than in their individual capacity. SIU, Defendants assert, is the true defendant in this case, as it is the entity that will be liable and responsible for any damages Plaintiff may be awarded. Thus, Defendants assert that Plaintiff's claims are barred by the Eleventh Amendment and fall within the exclusive jurisdiction of the Illinois Court of Claims (Doc. 18, p. 2).

**A.    Legal Standard**

**1.    Rule 12(b)(1)**

Defendants' Motion is made pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**, which allows a party to raise as a defense, by motion, a federal court's lack of subject matter jurisdiction over Plaintiff's claims. **FED. R. CIV. P. 12(b)(1)**. The Seventh Circuit has stated that although a plaintiff may easily defeat a **Rule 12(b)(6)** motion to dismiss for failure to state a claim, the same is not true for a **Rule 12(b)(1)** motion to dismiss for lack of subject matter jurisdiction. ***Bastien v. AT & T Wireless Services, Inc.*, 205 F.3d 983, 990 (7th Cir. 2000)**.

On a **Rule 12(b)(1)** motion, a district court is not required to accept as true the allegations in the pleadings, as it does when considering a motion to dismiss made pursuant to **Rule 12(b)(6)**. *Commodity Trend Services, Inc. v. Commodity Futures Trading Comm'n*, **149 F.3d 679, 685 (7th Cir. 1998)**. Rather, the plaintiff bears the burden of establishing jurisdiction and the court may look to evidence outside of the pleadings to determine whether federal subject matter jurisdiction exists. *Id.* **(citations omitted)**. The "presumption of correctness" normally afforded to a complainant's allegations does not apply where a defendant puts forth evidence contesting the court's jurisdiction. *Id.* Thus, this Court is not bound by Plaintiff's account of jurisdictional bases to hear her claim, nor is it limited to merely examining the face of the pleadings in determining subject matter jurisdiction, but may "look behind the plaintiff's allegations and make factual findings for purposes of assessing its subject matter jurisdiction." *Palay v. United States*, **349 F.3d 418, 424-25 (7th Cir. 2003) (citations omitted)**.

2. **Suits Against the State**

Under the Eleventh Amendment to the United States Constitution, State agencies and State officials acting in their official capacities, are generally immune from federal lawsuits brought by private individuals, when it is determined that the State is the real party in interest. *See Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, **432 F.3d 746, 748 (7th Cir. 2005)**; *Omosegbon v. Wells*, **335 F.3d 668, 672 (7th Cir. 2003)**; *Sonnleitner v. York*, **304 F.3d 704, 717 (7th Cir. 2002)**.

If the alleged tortious acts arose due to a breach of a duty imposed "'solely by virtue of [a defendant's] State employment, sovereign immunity will bar the maintenance of the action' in any court other than the Illinois Court of Claims." **Turner v. Miller, 301 F.3d 599, 602 (7th Cir. 2002) (citing Currie v. Lao, 592 N.E.2d 977, 980 (Ill. 1992); 705 ILL. COMP. STAT. 505/8(d) (1998))**. Conversely, where a State employee, "although acting within the scope of his employment, is charged with breaching a duty that arose *independently* of his State employment, a suit against him will not be shielded by sovereign immunity." **Currie, 592 N.E.2d at 980 (emphasis added)**. Determining whether the action is a suit against the State requires analyzing the issues involved and the requested relief, rather than the mere formal designation of the parties. *See* **Fritz v. Johnston, 807 N.E.2d 461, 466 (Ill. 2004) ("An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability.") (citing Currie, 592 N.E.2d at 980)**. Illinois considers State universities within its borders and their Board of Regents (or Governors) to be "arms of the State" for purposes of the Court of Claims Act.[1] *See* **Ellis v. Bd. of**

---

[1] **705 ILL. COMP. STAT. 505/8(d)** provides, in part, that the Court of Claims shall have exclusive jurisdiction to hear and determine "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against . . . the Board of Trustees of Southern Illinois University . . . provided, that an award for damages in a case sounding in tort, other than certain cases involving the operation of a State vehicle described in this paragraph, shall not exceed the sum of $100,000 to or for the benefit of any claimant."

*Governors of State Colleges and Universities*, 466 N.E.2d 202, 205-05 (Ill. 1984); *cf. Joseph*, 432 F.3d at 748 (the Board of Regents of state university considered an "arm of the state" for Eleventh Amendment purposes).

In analyzing whether the claims involved are really attributable to the State rather than State employees in their individual capacities, in *Robb v. Sutton*, the Appellate Court of Illinois for the Fourth District looked to: (1) whether there are allegations that a State agent or employee "acted beyond the scope of his authority through wrongful acts;" (2) whether "the duty alleged to have been breached" was owed to the public independent of the duties created by virtue of State employment; and (3) whether the alleged wrongful behavior involves "matters ordinarily within that employee's normal and official functions of the State." *Robb v. Sutton*, 498 N.E.2d 267, 272 (Ill. App. Ct. 1986); *see also Jinkins v. Lee*, 807 N.E.2d 411, 418 (Ill. 2004) (citing *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990), quoting *Robb*, 498 N.E.2d at 272).

**B.     Analysis**

Naturally, Defendants advocate that the criteria illustrated by the *Robb* case demonstrate that Plaintiff's suit is actually against the State, or the Board of Regents for SIU, rather than against the Defendants in their individual capacities. First, Plaintiff's request for specific performance – posting her Ph.D. – can only be fulfilled by SIU or an employee of SIU acting in his official capacity. Further, Defendants assert that the "duties" claimed to have been breached arose only by

virtue of their positions at SIU, not independently thereof. In other words, their failure or refusal to confirm that Plaintiff had earned her Ph.D. at SIU in the spring of 1999 was not a duty arising from their capacity as individuals, but only from their capacities as Deans, Assistant Deans and Professors. But for Defendants' employment, such duties would not exist. Defendants also argue that should they be found liable, SIU would be the party ultimately responsible for the damages and thus, should be the real party in interest. Lastly, Defendants challenge Plaintiff's allegations, stating that she has not plead they acted outside of the scope of their positions as employees and officials of SIU or that their actions were unauthorized by SIU. Granted, Plaintiff alleges that Defendants' actions were "wrongful" or "illegal," but Defendant explains that this is generally the case when a party brings a lawsuit (Doc. 18, p. 6).

In Response, Plaintiff argues that her suit alleges causes of action against Defendants in their individual capacities and therefore, exclusive jurisdiction does not lie with the Illinois Court of Claims. Instead, Plaintiff asserts that Defendants' alleged tortious actions were "undertaken without legal authority" in excess of the scope of their authority as employees and officials of SIU (Doc. 12, pp. 2-3). Basically, Plaintiff believes Defendants know she has earned her Ph.D., but all have affirmatively sought to deprive her of it; the Defendants have no authority to engage in this type of behavior, as their positions at SIU do not "call for them to engage in knowingly false conduct." In other words, she argues that [n]one of the Defendants had any discretion pursuant to any job duty to deny what the University

had conferred upon the Plaintiff" (Doc. 20, p. 3).

While at the heart of Plaintiff's claims in this case are allegations that Defendants either knowingly made false statements or made statements in wanton disregard of the truth, this alone cannot form the basis of the duties Defendants allegedly breached. True, we all have a basic duty to act in good faith and make honest representations, but such duty is a bit generic to be used in determining official capacity versus individual capacity claims. Instead, the Court must examine the specific context of these misrepresentations or fraudulent statements in order to find a more particularized duty alleged to have been breached.

Here, Plaintiff claims Defendants refused to verify she had earned a Ph.D. from SIU in 1999. Therefore, it was only by virtue of Defendants' employment at SIU, by the particular titles or offices they held, that put them in the position to be able to make such representations regarding Plaintiff's Ph.D. in the first place. Likewise, it was only by virtue of Defendants' employment that their alleged actions gave rise to Plaintiff's claims. Were it not for the specific nature of Defendants' employment, Plaintiff's employers would not have contacted them to verify whether Plaintiff had, in fact, earned a Ph.D. from SIU in 1999. Put differently, Plaintiff's employers would not have attempted to verify her claim of earning a Ph.D. from SIU with someone who had no affiliation with SIU – it would make no sense as someone not affiliated with SIU would havet no power to make an authoritative representation in that regard. Therefore, Defendants' alleged duty to truthfully represent to third parties whether Plaintiff earned her Ph.D. from SIU in 1999 stemmed from

Defendants' particular employment at SIU; it did not arise independently. Moreover, Plaintiff's allegations of Defendants' breach of duty involves "matters ordinarily within that employee's normal and official functions" as SIU employees, meaning, as part of their jobs, Defendants likely had to verify earned degrees to employers of former SIU students on a regular basis. **See generally, *Robb*, 498 N.E.2d at 272**.

The Court finds this case similar to the rationale expressed by the Appellate Court of Illinois in ***Robb***, where the plaintiff sued the assistant dean for the office of off-campus activities at SIU. Alleging counts of negligent misrepresentation and fraud, the plaintiff claimed the defendant had misrepresented that the off-campus educational program offered by SIU at Chanute Air Force Base, Illinois, had been approved by the Illinois Board of Higher Education ("IBHE"). In reliance on these representations, the plaintiff relocated to Illinois from North Carolina in order to take the position as the program coordinator for the SIU courses at Chanute. However, because the program was never even submitted for approval with the IBHE, the plaintiff's position at Chanute was eventually terminated. The plaintiff alleged that the defendant knew or should have known that the programs were not submitted for approval and had he made truthful representations in this regard, the plaintiff would never have relocated and taken the position at Chanute. ***Robb*, 498 N.E.2d at 269**.

Examining whether the suit was actually against SIU rather than the assistant dean defendant individually, the Illinois Appellate Court found that:

> [A]ny duty the defendant owed the plaintiff to make truthful or correct representations arose strictly out of his official duties. Plaintiff's allegations do not question the propriety of the defendant's actions except as they relate to the performance of his job as assistant dean. Plaintiff does not assert that the defendant acted beyond what he was authorized to do in communicating with the plaintiff concerning the programs at Chanute, the position there, and in offering that position to the plaintiff. Neither the pleadings nor the record even suggest a course of conduct entered into by the defendant beyond the scope of his duties as an agent of the State.

*Id.* **at 271**.

Lending further support to a finding that Plaintiff's suit is actually against SIU (or Defendants in their official capacities) is the fact that Plaintiff seeks specific performance via a mandatory injunction order (Count I) to post her Ph.D., effective the spring semester of 1999. Defendant Koropchak, individually, or the other two Defendants for that matter, have no power to do this. Only SIU or its authorized agents can do this. The fact that Plaintiff also seeks punitive damages from Defendants is not indicative of individual liability, as such damages can also be sought against Defendants in their official capacity, whereby SIU would be required to pay the ordered amount in damages on Defendants' behalf. For the reasons discussed herein, the Court finds that this suit is actually one filed against the State, or Defendants in their official capacities as employees of SIU, and thus, the Illinois Court of Claims has exclusive jurisdiction over the matter.

## IV. CONCLUSION

Finding that Plaintiff's claims against Defendants are really official capacity claims and therefore, properly made against SIU, the Court thereby lacks subject matter jurisdiction over Plaintiff's claims in the instant action, Defendants' Motion to Dismiss (Doc. 17) is hereby **GRANTED**, as the Eleventh Amendment bars federal suits against the State or State agents, such as SIU. Plaintiff's Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE** as exclusive jurisdiction lies with the Illinois Court of Claims.

**IT IS SO ORDERED**.

Signed this 11th day of June, 2008.

/s/    David R Herndon
**Chief Judge**
**United States District Court**